UNITED STATES DISTRICT COURT
DISTRICT OF NEW MASSACHUSETTS

C.A. #

Lisa A. Jacobs
    Plaintiff

    Vs.

Commonwealth of Massachusetts, MA State
Board of Ethics, Marisa Donelan Deputy
Chief MA State Board of Ethics, MA
Secretary of State Voter Election Division,
Michele Tassinari Esq. Lead counsel for the
MA Secretary of State Voter Election
Division, Attorney General's Office, Martha
Coakley, Attorney General's Office Civil
Rights Division, Middlessex District
Attorney's Office, Marion Ryan,
MA Administrative Office of the Trial
Court, MA Court Security, Middlessex
Superior Court, Kim Budd, Dennis Curran,
Michael Sullivan, Steve Poitrast, Greg
Flynn,Tobin Harvey, MCAD, Sunil Thomas
George, Lynn Goldsmith, Wayne Budd,
William Thompson Jr., Anne Kaufman,
Board of Bar Overseers Supervisor, Board
of Bar Overseers, etc. al.
    Defendants

COMPLAINT AND
JURY DEMAND

FILED IN CLERKS OFFICE
U.S. DISTRICT COURT DISTRICT OF MASS.
2014 SEP 25  P 3: 08

This is a suit brought pursuant to Title II of the Americans with Disabilities Act Section 504 of

the Rehabiltitation Act of 1973, 28 CFR Per 35, Title VII, M.G.L. c. 151 b M.G.L. c. 272 s92A,

89 and 98Aetc. All defendants are being sued in their individual capacities and also in their

official capacitties.  The "defendants" hereinafter refers to all defendants other than Wayne Budd

who is used under a claim for interference with advantageous business relations and under a

claim for tortous interference with contractural reltaions.  PARTIES:

1.        Lisa Jacobs MD MPH and Real Estate Broker is a resident at 20 Colchester Rd. Weston

         MA.

2.        Defendant Commonwealth of MA is a state organized under the laws of MA.

3.        Marissa Donnely, Esq. is the Associate Chief Counsel MA State Board of Ethics at 1 Ashburton Place Boston MA.

4.        Michele Tassinari Esq. is a resident at 9 Sushala Way Plymouth MA 02360 and the Lead Counsel for the MA Secretary of State Voter Election Division.

5.        Martha Coakley is a resident at 46 Coolidge Rd. Medford MA 02155and is the Attorney General who has an office at One Ashburton Place Boston MA 02108-1518.

6.        Wayne Budd Esq. is a resident at 505 Tremont St. Unit 902 Boston MA 02116-6306 and he is a MA licensed attorney who is the father of Kim Budd.

7.        Kim Budd is a resident at 72 Perkins St. Newton MA 02465-2341 and she is a Middlessex Superior Court Justice.

8.        William Thompson Jr. is a resident at 72 Perkins St. Newton MA 02465 and he is a MA state trooper who is married to Kim Buddd.

9.        Michael Sullivan is a resident at 42 Huron Ave. in Cambridge MA 02138 and is the Clerk of the Middlessex Superior Court.

10.       Steve Poitrast is a resident at 4 Bluebery Lane Hopkinton MA 01748-2502 and is the Clerk of the Waltham District Court.

11.       MCAD is at One Ashburton Place Sixth Floor Room 601 Boston MA 02108.

12.       Sunil Thomas George is a resident at One Ashburton Place Sixth Floor Room 601 Boston MA 02108.

13.       Lynn Goldsmith is a resident at 73 Grove St. Newton MA 02466-2316.

14.       Marian Ryan is a resident at 8 Bradford Rd. Belmont MA 02478.

15.       Jeffrey Bourgeois is a resident at 15 Commonwealth Ave. Woburn MA 01801 and 174 Sconticut Neck Rd. Fairhaven MA 02719.

16.       Regina Krumholz is a resident at 15 Commonwealth Ave. Woburn MA 01801.

17.       Caitlyn Gemmill is a resident at 15 Commonwealth Ave. Woburn MA 01801.

18.     John Doe is a resident at 15 Commonwealth Ave. Woburn MA 01801 whose name is being refused to be told.

19.     Greg Flynn is a resident at 28 Brooks Rd. Weston MA 02493.

20.     Tobin Harvey is a resident at 28 Upland Rd. Duxbury MA 02332.

21.     Dennis Curran is a resident at 21  Greylock Rd. Wellesley MA 02481.

22.     Mass. Commission Against Discrimination is at 1 Ashburton Place Boston MA.

23.     MA State Board of Ethics is at 1 Ashburto Place Boston MA.

24.     MA Secretary of State Voter Election Division is at 1 Ashburton Place Boston MA.

25.     MA Fair Labor Division is at 1 Ashburton Place Boston MA.

26.     Middlessex Superior Court is at 200 Trade Center in Woburn Ma.

27.     Waltham District Court is at 38 Linden St. in Waltham MA.

28.     Commonwealth of MA Civil Rights Division is at 1 Ashburton Place Boston MA.

29.     Board of Bar Overseers is at 99 High St. Boston MA.

30.     MA State Police are at 470 Worcester Rd. Framingham MA.

31.     Anne Kaufman is a supervisor official at the MA state board of bar overseers.

32.     VENUE:

33.     All jurisdictional prerequisites to a civil action have been met. On 5/5/2014 plaintiff filed a charge with MCAD that was dual filed with the EEOC against the defendants, etc. et al. and received a permission to sue letter from the MCAD on 8/25/2014.

34.     Venue in this court is proper pursuant to the Americans with Disability Act, M.G.L. c272 s92A, 89, 98A, etc. FACTUAL ALLEGATIONS COMMON TO ALL COUNTS:

35.     Plaintiff is a 48 year old handicapped with 2 cancers, degenerative disc disease and sensitivity/allergy to dogs Jewish female who was born in 1966 who was discriminated

3

against as a member of those protected classes as well as based on the perception of

her being mentally ill and on an affiliation with a physically disabled person who is her

mother Marilyn Jacobs who has a broken ankle and leg whereby by both are disabled

within the meaning of M.G.L. c. 151B s 1(5) and Americans with Disability Act 42 U.S.C.

212101 et seq..

36.      The plaintiff is a well known whistle blower who has exercised her first amendment

right successfully repeatedly at MA state regulatory agenices for the past 20 years and

who has been successful in some courts on a pro se basis beating the best law firms

and attorneys in the nation.

37.      In 2013, the City of New York Police department offered the plaintiff employment

whereby she impressed them.

38.      In 2013, a local MA Police department has her under an order to work only with the

FBI, and her FBI file is very interesting and impressive including reports of crimes on a

wide range of subjects in a wide range of different states of jurisdiction.

39.      Plaintiff is proceeding pro se in this court and this court is required to construe her

pleadings liberally.  See Prall vs. City of Boston, 985 F. Supp. 2 d 115, 120.

40.      Plaintiff makes a prime facie case for violations under the ADA as follows: The plaintiff

claims that her rights under the ADA have been repeatedly violated whereby based on

her disability of 2 cancers and based on the perception of being mentally ill then she

has been denied services including but not limited to the MA state police 911 service

and order*ed* not to use the service, the MCAD, the MA Board of Bar Overseers, the MA

Voter Election Division, the MA state police, the MA state Board of Ethics, the MA

victim compensation program, the MA Dept. of Revenue, MA state courts, and other

MA state services and programs also.

4

41.     The plaintiff's complaint includes that she is the but of a joke that if there is a fire in her home that the fire departments will not come and that the MA state fire marshall will not come to her home in order to investigate as the MA state services, and agencies do not want her participation as she is too outspoken with regard to asserting her civil rights, rights under the ADA, and discrimination and retaliation rights under state and federal laws.

42.     The plaintiff asserts that the defndants have violated her rights under the ADEA.

43.     The plaintiff asserts additionally that the defendants have violated her rights pursuant to section 42 U.S. Code s 1983 civil action for deprivation of rights whereby on or about March 20, 2013 Lynn Goldsmith Esq. a MA hearing officer for the MCAD basically told the plaintiff that she had no legal rights which was untruthful wherein the plaintiff asserted that her family has been educated like herself at Harvard, Yale, and Columbia, set the discrimination law for the nation at the supreme court, and that she would be suing the Commonwealth of MA as well as Goldsmith in her individual and official capacities for deprivation of her rights and that other acts by other officials happened on other dates like that also.

44.     The plaintiff cites the case of Camilo-Robles v. Zapat 175 F. 3d41 44 (1rst Cir. 1999) whereby she asserted in this complaint that she met the requirements as a pro se plaintiff to survive a motion to dismiss and a motion for summary judgment.

45.     The medical literature is clear that persons who suffer from medical disabilities like herself are vulnerable and easily able to be bullied by groups of persons including but not limited to by persons and groups of persons who include but are not limited to MA state officials at the Commonwealth of MA regulatory agencies, courts, and other locations of services of the defendants.

46.     The MA state supervisory officials who are named above are incorporated herein without repeating them and are as identified as: Donnely, Tassinari, Coakley, Kim Budd, William Thompson Jr., Sullivan, Poitrast, Thomas George, Goldsmith, Bourgeois, Krumholz, Gemmill, Flynn, Harvey Curran, Kaufman, etc.

47.     They are held liable on the basis of their own acts of harassing the plaintiff to conform to their standards of behaviors to be less outspoken, to file less litigation, to file against less defendants than just one defendant, to move out of state of MA, to use criminal prosecution system so as to curtail her first amendment constitutional right to complain to MA state regulatory agencies, to curtail her civil rights to litigate against Tamilyn Levin, the Town of Weston, William Carlo, etc.

48.     Regina Krumholz  prosecutes innocent persons, does not care that she is prosecuting the plaintiff who is an innocent person, does not care about doing investigations, does not care about exculpatory evidence, has no interest in exculpatory evidence and recognizes no duty whatsoever to produce exculpatory evidence whereby she did not even have the MA state police resources to do any investigation of any of plaintiff's alleged complaints on or about 12/13/2013 and thereinafter.

49.     In particular Bourgeois, Doe and Ryan who are Krumholz's supervisor promoted her to be a supervisor despite Peter Bella Esq. and the Board of Bar Overseers Ken Luke and other investigators complaining that Krumholz had violated the rules of attorney conduct whereby all intentionally refused to investigate, reprimand or let alone stop the harassing prosecution of the plaintiff on 12/13/2013 which caused her to suffer from the stopping of her medical doctor income, and her real estate practice income whereby the plaintiff demands the compensation for the loss of those practices.

6

50.     On or about since the 1990s the plaintiff has reported to the MA Board of Bar Overseers attorneys who have ruled in for misconduct whereby Anne Kaufman and the Board of Bar Overseers have admitted that they have misconduct, that plaintiff has been harmed by their misconduct, but that their attorney misconduct is allowed.

51.     On or about since 1978, the plaintiff has been repeatedly sexually traumatized and or assaulted and the MA state police, Middlessex District Attorney, Ryan and Coakley have chosen not to investigate and or prosecute for the plaintiff even when 2 other women were sexually assaulted by the same male with witnesses who watched the plaintiff in public being sexually assaulted.

52.     The MA state supervisory officials acted intentionally with malice whereby they knew or should have known that their advertisement of provision of services was untruthful in that they can not provide services to all and Coakley even put forth reportedly that she is not able to help or assist the plaintiff who is better educated woman than herself which lead the plaintiff to have the only recourse left of filing lawsuits whereby she encountered extreme retaliatory animus and was not welcomed into the courts but told that it is unsafe for her to be in the courts as she will be intentionally harmed in the state of MA court houses where she has been repeatedly harmed.

53.     The MA state supervisory officials who are named above are incorporated herein whereby they made significant omissions of providing less services to the plaintiff including but not limited to from March 31, 1996 by disrespecting her, treating her like she is a nobody, threatening to have her beaten up in a court house, having her beaten up in a court house on or about summer of 2013, etc.

54.     The MA state supervisory officials who are named above are incorporated herein whereby they were personally directly involved in the violation of the plaintiff's rights

by actively denying her services, taunting and tormenting her that she was denied

services compared to others who were not members of protected classes like Harvey,

Flynn and Poitrast who refuse to give the plaintiff a stamp dated copy, like Sullivan,

Curran and Budd who refuse to allow the plaintiff's documents to be filed in court and

who throw her pleadings into a tub to be returned to her, etc. whereby they were

directly involved in the actual violation of the plaintiff's rights and whereby they even

supervised and trained subordinates with deliberate indifference and actual

discriminatory animus towards the plaintiff like Sullivan admitting that he has done

anything and everything that he has been able to do with the court house staff

employees to try for 8 years to get her cases thrown out of court while he did so and

the plaintiff got a case reinstated.

55.    The MA state supervisory officials had deliberate indifference towards the possibility

that deficient performance of the tasks of giving the plaintiff due notice, due process,

filings, and the right to be heard as well as discovery rights, police investigations,

provision of standard services like investigations into prostitution contributed to the

plaintiff's civil rights deprivation whereby eventually the MA state police Detective

Lieutenant William Coulter even admitted on or about September 22, 2014 that the

Commonwealth of MA, and MA state police and state regulatory agencies have

insufficient resources to investigate the plaintiff's complaints so as to have caused the

plaintiff to suffer from significant civil rights deprivations.

56.    The MA officials do not have sufficient investigative resources to help and assist all

whereby they identified the plaintiff as an Ivy league educated medical doctor, with a

masters degree in public health, with a  real estate broker's license, with being the

broker of record for a real estate firm and with having completed masters in business

8

education courses and have her identified in the Commonwealth of MA system to be denied all services and to be required to provide services for herself as well as her disabled elderly mother who she is put forth as a 24 hour day 7 days a week caretaker.

57.    The MA officials instead routinely deny the investigative services and advise the plaintiff that the only recourse that exists is to sue in the courts of MA where she is repeatedly physically injured and emotionally harmed with her cases being improperly thrown out of court.

58.    The Commonwealth of MA, Donnely, Tassinari, Coakley, Kim Budd, Sullivan, Poitrast, Goldsmith, Ryan Bourgeois, Krumholz, Gemmill, Flynn, Harvey, Curran, MCAD, MA Secretary of State Voter Election Division, etc. intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of their conducts whereby preventing the plaintiff from venting to the MA regulatory state agencies they caused her to live with knowledge of criminal acts and other bad acts that have been too much for her to bear emotionally to carry as a burden as well as isolating her from her long standing relationships with her investigators whereby she has mourned the loss of the relationships.

59.    The defendants prevented the plaintiff from exercising her first amendment constitutional rights by threatening her with criminal charges if she opens her mouth and this and other conducts were extreme, outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized community.

60.    The actions of the defendants were the cause of plaintiff's distress..

61.    The emotional distress suffered by the plaintiff was severe and of such a nature that no reasonable person could be expected to endure it.

62.    The defendants were negligent to have stopped the plaintiff from complaining to MA state regulatory agencies.

63.    The defendants caused the plaintiff to suffer emotional distress by making her stop complaining to the MA state regulatory agencies that includes but is not limited to various events including but not limited to how the Levins did not call 911 for a fire at their neighbor's, about how J.G. and Steve Levin went to a fire at 699 Wellesley St., refused to try to put out the fire, had glum facial expressions, looked happy that Ross Giamo died and that J.G. is a "clear sociopath." and that Tamilyn Levin, Steve Levin, and J.G. are credited with the fire at 699 Wellesley St. and the death of Ross Giamo a retired Weston firefighter that the MA fire marshall tried to identify a fire starter for the fire and failed to do so.

64.    The defendants caused the palitiff to suffer from crying, insomnia, headaches, and guilt over the public not being protected and remaining in danger.

65.    A reasonable person would have suffered emotional distress under the circumstances of the case.

66.    Plaintiff filed complaints at MCAD and Fair Labor Division where she complained she was being discriminated and retaliated against based on being a member of her protected classes in being denied services, being treated in a dismissive manner and required to litigate on her own while services were being provided to members of those who were not of her protected classes on or about from August 20, 2010 onwards.

67.    Plaintiff qualified for protection under the Americans with Disabilities Act Title II and Section 504 of the Rehabilitation Act of 1973 as amended 29 U.S.C. 794 which applied to the defendants and in subtitle A protected her and her mother from discrimination

on the basis of disability in services, programs, and activities provided by state and local government entities whereby they were discriminated against and provided with less than standard services at the MCAD, the Waltham District Court, the Middlessex Superior Court, the MA Board of Bar Overseers, the MA Secretary of State Voter Election Division, etc.

68.     Plaintiff has been denied services at the MCAD, the Fair Labor Division, the MA state board of ethics, the MA state secretary of state voter election division, the MA state board of bar overseers, the MA victim compensation and assistance division, based on her disabilities whereby they refuse to provider her and her mother with services including but not limited to taking of complaints, writing up charges of discrimination, investigating complaints of discrimination, investigating non-payment, issuing an order for payment, doing due diligence regarding investigations, issuing determinations from the MA state board of ethics, issuing a determination regarding Tamilyn Levin having done a violation of M.G.L. c. 56 s. 8 from the MA secretary of state voter election division which they are required to issue because the plaintiff asked for it, refusing to issue attorney misconduct findings despite agreeing that her complaints are accurate regarding misconduct given including but not limited to friendship with an accused an attorney who was guilty of misconduct, failing to provide victim compensation and assistance, refusing to prosecute criminal complaints, refusing to prosecute an elder neglect and abuse complaint regarding her mother Marilyn Jacobs RN MED of June 19, 2014 which Springwell and a social worker determined were accurate, etc..

69.     On or about since January 15, 2010 through present, the MCAD has a statement that that it is impossible for this woman Lisa Jacobs MD MPH and Real Estate Broker to have been discriminated and retaliated against the number of times that she claims, so

11

do not investigate any of her complaints, and dismiss all of them without probable cause which the MCAD continued to do despite the plaintiff having been successful repeatedly and having had her family set the case law for discrimination and retaliation for the nation repeatedly at the U.S. Supreme Court.

70.    On or about January 15, 2010 onwards the MCAD workers through present wanted the plaintiff to do the work of a MCAD intake worker, the work of an attorney in court, etc. while refusing to compensate the plaintiff who is an Ivy League medical doctor with a masters degree in public health, a real estate broker's license, a real estate firm, and also masters in business education courses whereby the plaintiff's rate for compensation is easily $795 an hour for just being a doctor whereby they in essence have made her work for free tirelessly at litigation that she is lined up in state court to loose despite her being right based on their discriminatory animus.

71.    On or about January 15, 2010 and onwards the MCAD required that the plaintiff work for free including but not limited to Victor Pogado. Victor Pogado ordered the plaintiff to write the intake charge of discrimination for Xia Zhang and refused to write one for Zhang or Jacobs.

72.    On or about Jan. 15, 2010 Pogado told plaintiff various distriminatory statements like that since she is a Caucasian female then her white race is protective and it is impossible for her to be discriminated and or retaliated against given that her Caucasian race is protective and prevents her from being discriminated and retaliated against as it is impossible for white people to be discriminated and or retaliated against. Victor Pogado also said that the agenda of the MCAD is to push and promote cases of African American and Latin Americans and not white American born females

like herself so that her cases will not have a free attorney assigned to them, will not be taken seriously and she will have to litigate her own cases in court.

73.     Plaintiff complained that she was being treated in a disparate fashion based on her race of being Caucasian in that she was being treated in a dismissive manner compared to non-white persons.

74.     On or about March 15, 2010, a black female MCAD intake worker confirmed that Pogado's statements were truthful and explained that the MCAD political agenda was to promote the discrimination cases of non-white persons. The intake worker wrote a deficient charge of discrimination, explained that the MCAD was promoting black, Latin American and not white female discrimination cases and to either sign the deficient complaint that the intake worker wrote or threatened that the plaintiff would not be allowed to file complaints at the MCAD.

75.     The plaintiff complained that she was being denied standard services, provided services that were less than standard compared to other persons who were not members of protected classes, signed the complaint and protested. The plaintiff also complained that she was not being allowed to name individual respondents and more than a single classification of discrimination so as to harm her legal rights in court whereby eventually defense attorneys argue that if an individual is not named as an individual respondent and if greater than one class of discrimination is not identified in the original complaint then they argue that the legal right is given up.

76.     On or about August 20, 2013 the Fair Labor Division produced right to sue letters that were deficient and left out the names of defendants that curtailed the plaintiff's rights and did not spell the names of the parties to be sued accurately so as to curtail the

plaintiff's rights whereby she asked again for the right to sue letter with all names of parties listed to be sued and their names spelled accurately.

77.    On or about December 10, 2010 through August 30, 2013, plaintiff complained to Tom Johnson Esq., Ed Minchello, and other investigators at the Fair Labor Division that she is a member of protected classes in being an over the age of 40 year old Caucasian Jewish female who is medically disabled and who is perceived to be mentally ill who based on being a member of those protected classes was being discriminated against in being treated differently than others who were not members of her protected classes.

78.    The plaintiff cited the case of Chaiyakerk Kalmosiri who is a not American born male from Thailand who was a property manager for Robert Lupo. The Fair Labor Division ordered Lupo to pay Kalmosiri his wages and the Fair Labor Division was refusing to find for her when she was also an unpaid property manager who had worked for Lupo also during the same time period as Kalmosiri.

79.    The plaintiff complained that she was being treated in a disparate manner compared to Kalmosiri whereby she was being required to pay for out of pocket expenses, deposition costs, filing costs, and hourly attorney fee rates in order to litigate in court where she argued that she was being treated in a dismissive manner and not even wanted to be in the MA state courts.

80.    On or about Dec. 10, 2010 through on or about August 30, 2013, Edward Johnson Esq., Ed Minchello and another investigator admitted that since plaintiff is an American born Caucasian female then she is treated differently than others who are not American born non-Caucasians at the Fair Labor Division whereby she is denied the investigation, the orders for her to be paid, the negotiation, the settlement service and is required to

litigate her case in the courts herself given that she is an American born Caucasian female. They also explained that their political agenda is to serve the needs of immigrants and not American born white persons like herself and that she was definitely treated differently than Kalmosiri Chaiyakerk as he is a male Thai not white race immigrant who is not American born and as she is an American born Caucasian female which means as such given her American birth, given her white race, and given her female gender then she must litigate her own cases in court as the Commonwealth of MA will provide her with no services whatsoever.

81.     Johnson intimidated the plaintiff that she was a medical doctor and a real estate broker who was highly educated even more educated than Martha Coakley Esq. and that she was required to litigate in court her own cases.

82.     The plaintiff asked for a reaonsable modification under the Americans with Disabilities Act for services to be provided and an order for Lupo to pay her at the MCAD like had been provided for her co-worker Kalmosiri and Johnson, the Fair Labor Division and those state entities refused to deny in writing her Americans with Disabilities Act request and instead again reiterated that she must litigate herself her own cases while not having any legal education whatsoever and not even knowing the rules of court, the rules of civil procedure or the laws of the U.S.A..

83.     The plaintiff complained that she had 2 cancers and that stress can make her cancer progress so as to kill her sooner than she should die and the MCAD and Fair Labor Division refused to provide her with services under the Americans with Disabilities Act request and refused to provide written denials in writing.

84.     In 2011, 2012, 2013, 2014, the plaintiff would check to learn that none of her cases were being even investigated at the MCAD, but instead were sitting there and she kept

learning that under no uncertain terms would she ever be given a free attorney from the state of MA to litigate her cases, and that she needed to litigate the cases herself or hire an attorney.

85.    Under Title II of the Americans with Disabilities Act the plaintiff asked for a reasonable accommodation on the basis of having 2 cancers that she is indigent and not able to afford to pay an attorney so she requested that the Commonwealth of MA provide her with free attorneys from the MCAD and the Fair Labor Division to litigate her cases and the MCAD, the Fair Labor Division and the Commonwealth of MA refused to deny her requests in writing and reiterated that she must go to court and litigate her own cases.

86.    The MCAD cited the plaintiff's track record of success in court.

87.    On or about August 15, 2013, Elizabeth Hickey admitted that for the case of Lisa Jacobs vs. Robert Lupo at the MCAD should have found probable cause for the plaintiff, but that the MCAD did not do so, that had the MCAD found probable cause the plaintiff would have gotten an attorney for free from the state of MA to litigate the case and instead the plaintiff would have to litigate herself and or find a private attorney.

88.    On or about Dec. 15, 2013 the MCAD allowed for the filing of a motion to dismiss of Louison, Condon, Costello and Pfaff P.C. of Lisa Jacobs vs. the town of Weston without a certificate of service on it that the MCAD never should have allowed to be filed as there was no certificate of service in that the plaintiff never received the motion to dismiss.

89.    On or about Dec. 15, 2013, the MCAD, Sunil Thomas George, Lynn Goldsmith Esq. and others at the MCAD intentionally acted with malice so as to hugely violate the plaintiff's civil rights, constitutional rights, due notice, due process, and discovery rights in not only allowing the motion to dismiss to be filed but also on January 10,

2014 granting the motion to dismiss while not allowing the plaintiff to do any discovery whatsoever and not even bothering to check to see if the plaintiff had ever even received the motion to dismiss while observing that the plaintiff never even had filed an opposition to the motion to dismiss which the MCAD knew was totally out of her character.

90.     Shortly after on or about January 10, 2014, the plaintiff asked for the MCAD case Lisa Jacobs vs. the town of Weston to be reinstated, asked for a public information records request to be processed to provide her with a copy of the motion to dismiss which Louison, Costello, Condon and Pfaff P.C. had refused to provide to her, to receive a copy of the motion dismiss, to be allowed to do discovery, and Commonwealth of MA, the MCAD, Sunil Thomas George and Lynn Goldsmith refused to allow the plaintiff to have a copy of the motion to dismiss from the MCAD, refused to allow the case to be reinstated despite their error, refused to allow the plaintiff to do discovery and admitted that they were shutting down the plaintiff's rights and had made it harder for the plaintiff to win in court eventually by intentionally and maliciously violating her rights.

91.     On March 20, 2014 there was an appeal at which time Lynn Goldsmith told the plaintiff that the plaintiff was finished, that the plaintiff had no legal rights whatsoever, was uncertain as to whether or not the plaintiff had filed an amendment to the original charge of discrimination dated Nov. 15, 2013, and that Goldsmith was shutting down the plaintiff's legal rights.

92.     On March 20, 2014 the plaintiff complained that Goldsmith was aiding and abetting the discrimination and retaliation at the MCAD, that Goldsmith was intimidating and coercing the plaintiff to believe that the plaintiff had no right to sue the town of

Weston given that Goldsmith was going to find against Jacobs while not caring that plaintiff's civil rights had been hugely violated.

93.     On or about March 20, 2013 Goldsmith ordered for Louison, Costello, Condon and Pfaff P.C. Regina Ryan Esq. to produce an affidavit as to whether or not an original certificate of service was ever done for a motion to dismiss dated 12/15/2013, and to admit as to whether or not the plaintiff was ever actually sent the motion to dismiss dated 12/15/2013 and Goldsmith ruled without that order being enforced that the plaintiff's MCAD case vs. the town of Weston was dismissed.

94.     Mathew Madden Esq. produced 3 motions to dismiss none of which had a certificate of service attached to it and Lynn Goldsmith Esq. admitted that the original motion to dismiss which the MCAD allowed did not have a certificate of service attached to it.

95.     From on or about December 10, 2010 onwards and including but not limited to on July 29, 2014 the plaintiff asked for a certified copy of including but not limited to the motion to dismiss via MCAD public information request forms and other letters, and the MCAD and the Commonwealth of MA has always refused to release any information to her from the MCAD for her to use in any of her cases in Middlessex Superior Court or Federal Court whereby she has survived repeatedly motions to dismiss.

96.     On or about Dec. 10, 2010 and onwards the Commonwealth of MA and MCAD has released information to the attorneys defending against the plaintiff but for once whereby in Lisa Jacobs vs. James Lowenstern in Middlessex Superior Court, Martha Coakley blocked the release of the MCAD records to opposing defense counsel but in general the plaintiff has been denied public information requests, freedom of

information requests and the attorneys who oppose her are typically aided and abetted by the Commonwealth of MA.

97.     On or about since December 10, 2010 onwards including but not limited to on or about May 5, 2014, May 12, 2014, Marzella Hightower and other MCAD workers have told the plaintiff that she is not allowed to file complaints at the MCAD and or at other times that she is only allowed to file one complaint and has to come back in order to file another complaint even when nobody else has been at the MCAD even interested in filing a complaint whereby the MCAD employees have intentionally harassed her not to file MCAD complaints and the Middlessex Superior Court staff has also harassed her not to file law suit complaints whereby they have informed her that they will get her complaints thrown out of court and they keep doing so wrongly whereby she can get some reinstated on clerical errors.

98.     On or about March 19, 2013, plaintiff complained that she was being discriminated against as a member of the afore-mentionned protected classes including but not limited to at a hearing at the Middlessex Superior Court by black females Lydia Reny and Jessie Bernard who were court house employees who appeared threatening to the plaintiff, admitted to throwing her pleadings into the trash for years, and also to swearing at her.

99.      After the hearing during which Jacobs complained of being discriminated against by black females who were employees of the Commonwealth of MA, the Commonwealth of MA destroyed intentionally the recording so that there is no transcription of the events.

on or about 3/2013

100.    Eventually, a black female security officer and an assistant clerk kidnapped the
plaintiff, harassed her, and held her against her will in the court room on the
basis of a prank being played on Jacobs alone whereby they feigned that there
was a lockdown in the court house and that everybody was trapped when there
was no lockdown in the court house, nobody was trapped and when there was no
legal grounds to hold the plaintiff in the courtroom.  Instead, they made the
plaintiff sit in the courtroom for the afternoon while intentionally and
maliciously misleading her to believe that her life was in danger of her being
killed.

101.    There was not a lockdown in the court house and instead, they were playing a
prank on the plaintiff and knew that they were not trapped but they led the
plaintiff to believe that she was trapped in the court house and could not get out
of it along with everybody else in it.

102.    The court security officer and assistant clerk put forth an elaborate ruse that
there was a lockdown in the court house when there was not any lockdown
taking place.  The officer put forth that there was an alteraction in the clerk's
office on the second floor so that nobody allegedly could get out of the building
and all were trapped in the building when that was untruthful.  Officer described
that nobody could descend lower than the second floor of the building via the
elevator or stairs, and that people had tried and failed which was untruthful.

103.    Jacobs plotted to go down the stairs to the third floor to the library, to break a
window,  jump out of the window and was in fear for her life.